UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

ANTHONY VITALE, Lynn Vitale, Vikiana Carranza and Israel Carranza, individually and as Parent and natural guardian of I.C. and A.C., minors, Brenda Walsh Matias, David Weidow, Julia Weidow and Nicholas Weidow, individually and as Parent and natural guardian of J.W., minor, Theresa Weidow, Robert Weidow, Barbara Wilson, Charles Perrella, Natalie Weber, Anatoliy Vortman, Igor Sapozhnikov, Eleina Sapoz, Carole Barrowman, Robert Barrowman, Joanne Borek, Richard Borek, John Mulligan individually and as Personal Representative of the Estate of Tammy Taylor, Eric Mulligan, Elora Mulligan, Blake Sheedy, Stanislaw Niznikiewicz, Brian Kouri and Sara Kouri, individually and as Parent and natural guardian of A.T., B.T., R.K., and L.K., minors, Ellen Leffak, Ira Michael Leffak, Sarah Kashani and Michael Kashani, individually and as Parent and natural guardian of J.K., and M.K., minors, Laura Berger and Jonathan Berger, individually and as Parent and natural guardian of T.B., A.B., B.B., and R.B, minors, Sally Jean Makely, individually and as Parent and natural guardian of G.M., K.M., K.M., O.M., and N.M., minors, Kathryn Carney Falkman on behalf of C. F., minor, Owen Makely, Amal Nweiran Al Harayzeh and Imad Nweiran, individually and as Parent and natural guardian of N.N., minor, Sara Nweiran, Dania Nweiran, Donna Hyman, Ira Hyman, Benito Juarez, Kristen Juarez, Ladger Neustaeter and Andrea Neustaeter, individually and as Parent and natural guardian of R.N., and P.N., minors, Kristina Johnstone and Brent Johnstone, individually and as Parent and natural guardian of E.J., and M.J., minors, Stacy DiAddezio and Stephen DiAddezio, individually and as Parent and natural guardian of D.D., N.D., and S.D., minors, Barbara DeLiberali, John DeLiberali, Jeanne Becvar, Glenn Becvar, Heather Becvar, Paul Franco, Patricia Franco, Stephanie German and Brett Alperowitz, individually and as Parent and natural guardian of L.A., Z.A., R.A., minors, Dorothy Barenscott, Brian Barenscott, Lori Boyer, Jeffrey Boyer, Shane Boyer, Janelle Peachy, Bonnie Walter, Stephen Walter, Cheryl Moore, Michael Moore, Chantal Martineau, Philippe Dottini, Genvieve Dottini, Charles Routhier, Patrick Bober and Ana Bober, individually and as Parent and natural guardian of G.B., minor, Lisette Coly, George E. Damalas, Anatasia Damalas, George R. Damalas, Natalia Damato, Miriam Quinn, Dennis Quinn, Kelly Merlino, Isabella Merlino, Gabriella Merlino, Ron Moore, Allison Moore, Morgan J. Moore, Daisy Laureano, Dorota Niznikiewicz, individually and as Parent and natural guardian of M.N., minor, Marie Josee Fontaine, individually and as Parent and natural guardian of F.V., minor, Raphaelle Villenueve, Nathalie Fontaine and Garett Gustafson, individually and as Parent and natural guardian of G.G., and M.G., minors, Genevieve Fontaine and Michel Meunier, individually and as Parent and natural guardian of H.M., minor, Claire Fontaine, Denis Fontaine, Laurie Forbes Levack, Kent Levack, Faith Lorman, individually and as Parent and natural guardian of A.L., minor, William Lorman, Olivia Lorman, Lisa Marie Huntbach and William Huntbach, individually and as Parent and natural guardian of T.H., and K.H., minors, James Anderson, Dorothy Anderson, Domenic Casiero and Santina Casiero, individually and as Parent and natural guardian of C.C., and G.C., minors, Joan E. Kurtz, Joan M. Kurtz, individually and as Parent and natural guardian of R.J., minor, Patricia Lipshultz, individually and as Parent and natural guardian of J.L., minor, Eileen Lipshultz, Tamara King-Morrieson and Jeremy Morrieson, individually and as Parent and natural guardian

1

of J.M., A.M., S.M., minors, Amy Barailloux, Frank Barailloux, Chris Busch, Jessica Babylon, Megan Liliestedt, Joanna Bermingham, Daniel Sulvetta, Janet Isenman, Charles Isenman, Francis Godfrey, Janet Godfrey, Elisabeth Oistad and Tormod Syversen, individually and as Parent and natural guardian of E.S. and L.S., minors, Donald Simone, Maureen Simone, Judith Farrell,

 Plaintiffs,

v.

NCL (BAHAMAS) LTD.,

 Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs hereby sue Defendant and allege as follows:

## JURISDICTION AND PARTIES

1. Plaintiffs, Anthony Vitale and Lynn Vitale, are residents of New York.

2. Plaintiffs, Vikiana Carranza, Israel Carranza, individually and as Parent and natural guardian of I.C. and A.C., minors, are residents of New Jersey.

3. Plaintiff, Brenda Walsh Matias, is a resident of Pennsylvania.

4. Plaintiff, David Weidow, is a resident of Pennsylvania.

5. Plaintiffs, Julia Weidow, Nicholas Weidow, individually and as Parent and natural guardian of J.W., minor, are residents of Pennsylvania.

6. Plaintiffs, Theresa Weidow and Robert Weidow, are residents of Pennsylvania.

7. Plaintiff, Barbara Wilson, is a resident of Pennsylvania.

8. Plaintiff, Charles Perrella, is a resident of Pennsylvania.

9. Plaintiff, Natalie Weber, is a resident of New York.

10. Plaintiff, Anatoliy Vortman, is a resident of Connecticut.

11. Plaintiffs, Igor Sapozhnikov and Eleina Sapoz, are residents of Connecticut.

12. Plaintiffs, Carole Barrowman and Robert Barrowman, are residents of New York.

13. Plaintiffs, Joanne Borek and Richard Borek, are residents of New York.

14. Plaintiff, John Mulligan, is a resident of Canada.

15. Plaintiff, John Mulligan, as Personal Representative of the Estate of Tammy Taylor.

16. Plaintiff, Eric Mulligan, is a resident of Canada.

17. Plaintiff, Elora Mulligan, is a resident of Canada.

18. Plaintiff, Blake Sheedy, is a resident of Canada.

19. Plaintiff, Stanislaw Niznikiewicz, is a resident of New York.

20. Plaintiffs, Brian Kouri, Sara Kouri, individually and as Parent and natural guardian of A.T., B.T., R.K., and L.K., minors, are residents of North Carolina.

21. Plaintiffs, Ellen Leffak and Ira Michael Leffak, are residents of Ohio.

22. Plaintiffs, Sarah Kashani, Michael Kashani, individually and as Parent and natural guardian of J.K., and M.K., minors, are residents of New York.

23. Plaintiffs, Laura Berger, Jonathan Berger, individually and as Parent and natural guardian of T.B., A.B., B.B., and R.B., minors are residents of Ohio.

24. Plaintiffs, Sally Jean Makely, individually and as Parent and natural guardian of G.M., K.M., K.M., O.M., and N.M., minors, are residents of New York.

25. Plaintiff, Kathryn Carney Falkman on behalf of minor C. F., is a resident of New York.

26. Plaintiff, Owen Makely, is a resident of New York.

27. Plaintiffs, Amal Nweiran Al Harayzeh, Imad Nweiran, individually and as Parent and natural guardian of N.N., minor, are residents of New Jersey.

28. Plaintiff, Sara Nweiran, is a resident of New Jersey.

29. Plaintiff, Dania Nweiran, is a resident of New Jersey.

30. Plaintiffs, Donna Hyman and Ira Hyman, are residents of New York.

31. Plaintiffs, Benito Juarez and Kristen Juarez, are residents of Pennsylvania.

32. Plaintiffs, Ladger Neustaeter, Andrea Neustaeter, individually and as Parent and natural guardian of R.N., and P.N., minors, are residents of Canada.

33. Plaintiffs, Kristina Johnstone, Brent Johnstone, individually and as Parent and natural guardian of E.J., and M.J., minors, are residents of Canada.

34. Plaintiffs, Stacy DiAddezio, Stephen DiAddezio, individually and as Parent and natural guardian of D.D., N.D., and S.D., minors are residents of Pennsylvania.

35. Plaintiffs, Barbara DeLiberali and John DeLiberali, are residents of Pennsylvania.

36. Plaintiffs, Jeanne Becvar and Glenn Becvar, are residents of New York.

37. Plaintiff, Heather Becvar, is a resident of New York.

38. Plaintiffs, Paul Franco and Patricia Franco, are residents of Connecticut.

39. Plaintiffs, Stephanie German, Brett Alperowitz, individually and as Parent and natural guardian of L.A., Z.A., R.A., minors, are residents of New York.

40. Plaintiffs, Dorothy Barenscott and Brian Barenscott, are residents of Canada.

41. Plaintiffs, Lori Boyer and Jeffery Boyer, are residents of Pennsylvania.

42. Plaintiff, Shane Boyer, is a resident of Pennsylvania.

43. Plaintiff, Janelle Peachy, is a resident of Pennsylvania.

44. Plaintiffs, Bonnie Walter and Stephen Walter, are residents of Pennsylvania.

45. Plaintiffs, Cheryl Moore and Michael Moore, are residents of New York.

46. Plaintiff, Chantale Martineau, is a resident of Canada.

47. Plaintiff, Philippe Dottini, is a resident of Canada.

48. Plaintiffs, Genevieve Dottini and Charles Routhier, are residents of Canada.

49. Plaintiffs, Patrick Bober, Ana Bober, individually and as Parent and natural guardian of G.B.,

minor, are residents of Germany.

50. Plaintiffs, Lisette Coly and George E. Damalas, are residents of New York.

51. Plaintiff, Anatasia Damalas, is a resident of New York.

52. Plaintiff, George R. Damalas, is a resident of New York.

53. Plaintiff, Natalia Damato, is a resident of New York.

54. Plaintiffs, Miriam Quinn and Dennis Quinn, are residents of Pennsylvania.

55. Plaintiff, Kelly Merlino, is a resident of Pennsylvania.

56. Plaintiff, Isabella Merlino, is a resident of Pennsylvania.

57. Plaintiff, Gabriella Merlino, is a resident of Pennsylvania.

58. Plaintiffs, Ron Moore and Allison Moore, are residents of New York.

59. Plaintiff, Morgan J. Moore, is a resident of Oklahoma.

60. Plaintiff, Daisy Laureano, is a resident of New York.

61. Plaintiff, Dorota Niznikiewicz, individually and as Parent and natural guardian of M.N., minor, are residents of New York.

62. Plaintiffs, Marie Josee Fontaine, individually and as Parent and natural guardian of F.V., minor, are residents of Canada.

63. Plaintiff, Raphaelle Villeneuve, is a resident of Canada.

64. Plaintiffs, Nathalie Fontaine, Garett Gustafson, individually and as Parent and natural guardian of G.G., and M.G., minors, are residents of Canada.

65. Plaintiffs, Genevieve Fontaine, Michel Meunier, individually and as Parent and natural guardian of H.M., minor, are residents of Canada.

66. Plaintiffs, Claire Fontaine and Denis Fontaine, are residents of Canada.

67. Plaintiffs, Laurie Forbes Levack and Kent Levack, are residents of Connecticut.

68. Plaintiffs, Faith Lorman, individually and as Parent and natural guardian of A.L., minor, are residents of Maryland.

69. Plaintiff, William Lorman, is a resident of Maryland.

70. Plaintiff, Olivia Lorman, is a resident of Maryland.

71. Plaintiffs, Lisa Marie Huntbach, William Huntbach, individually and as Parent and natural guardian of T.H., and K.H., minors, are residents of England.

72. Plaintiffs, James Anderson and Dorothy Anderson, are residents of New Jersey.

73. Plaintiffs, Domenic Casiero, Santina Casiero, individually and as Parent and natural guardian of C.C., and G.C., minors, are residents of Canada.

74. Plaintiff, Joan E. Kurtz, is a resident of New Jersey.

75. Plaintiffs, Joan M. Kurtz, individually and as Parent and natural guardian of R.J., minor, are residents of New Jersey.

76. Plaintiffs, Patricia Lipshultz, individually and as Parent and natural guardian of J.L., minor, are residents of New Jersey

77. Plaintiff, Eileen Lipshultz, is a resident of New Jersey.

78. Plaintiffs, Tamara King-Morrieson, Jeremy Morrieson, individually and as Parent and natural guardian of J.M., A.M., S.M., minors, are residents of New Jersey.

79. Plaintiffs, Amy Barailloux and Frank Barailloux, are residents of Ohio.

80. Plaintiff, Christopher Busch, is a resident of Canada.

81. Plaintiff, Jessica Babylon, is a resident of Massachusetts.

82. Plaintiff, Megan Liliestedt, is a resident of Massachusetts.

83. Plaintiff, Joanna Bermingham, is a resident of Pennsylvania.

84. Plaintiff, Daniel Sulvetta, is a resident of Pennsylvania.

85. Plaintiffs, Janet Isenman and Charles Isenman, are residents of New York.

86. Plaintiffs, Francis Godfrey and Janet Godfrey, are residents of New York.

87. Plaintiffs, Elisabeth Oistad, Tormod Syversen, individually and as Parent and natural guardian of E.S. and L.S., minors, are residents of Norway.

88. Plaintiffs, Donald Simone and Maureen Simone, are residents of Pennsylvania.

89. Plaintiff, Judith Farrell, is a resident of New York.

90. Defendant, NCL (BAHAMAS) LTD (hereinafter referred to as "NCL"), is a foreign entity with its principal place of business in Miami, Florida.

91. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the event diversity jurisdiction does not apply to any or all of the Plaintiffs, then this matter is brought under the admiralty and maritime jurisdiction of the Court.

92. Defendant, NCL, at all times material, personally or through an agent;

   a. Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b. Was engaged in substantial activity within this state;

   c. Operated vessels in the waters of this state;

   d. Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

   e. The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state.

   f. The Defendant was engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, *Norwegian Breakaway*.

93. Defendant is subject to the jurisdiction of the Courts of this state.

94. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

95. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, *Norwegian Breakaway*.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

96. This lawsuit involves Defendant NCL's knowing and intentional decision to sail the *Norwegian Breakaway*, **carrying more than 4,000 paying passengers, directly into the path of a massive weather event (Bomb Cyclone)**.  More than 4,000 passengers were subjected to hours of terror as the gigantic cruise ship was battered by hurricane force winds and more than 30 foot waves.

97. Prior to disembarking Great Stirrup Cay on Tuesday January 2, 2018, there were numerous forecasts which predicted the storm which the *Norwegian Breakaway* encountered. At approximately 6 p.m. on Saturday December 31, 2017, the National Oceanic and Atmospheric Administration's (NOAA) Ocean Prediction Center first headlined the possibility of hurricane force winds for Thursday, January 4, 2017, along the eastern coast near Northern Florida:



98. On January 1, 2018, the Weather Prediction Center's Winter Weather Forecast Discussion predicted a strong northward-tracking area of low pressure would bring wintry precipitation to much of the East Coast of the United States:



99. On January 2, 2018, weather forecasters from the U.S. government and private sector were unanimous in predicting a storm of historic proportions would form off the Southeast coast, near Florida, and spin up the East Coast toward Nova Scotia by January 5, 2018. NOAA indicated that winds would increase to 80 knots and seas up to 33 feet by January 4, 2018:



100. On January 2, 2018, at approximately 5:30a.m., NOAA issued a warning of **hurricane force winds** for Wednesday night January 3, 2018, and Thursday January 4, 2018:



101. The subject vessel left Great Stirrup Cay, Bahamas for New York at approximately 6 p.m. on Tuesday January 2, 2018, thirteen (13) hours after NOAA's warning of hurricane force winds expected in the vessel's intended and actual path.

102. NCL knew or should have known of these hurricane force wind warnings, but nonetheless, the *Norwegian Breakaway* left Great Stirrup Cay, Bahamas, on January 2, 2018, intending to sail back to New York, carrying more than 4,000 paying passengers.

103. After the vessel left Great Stirrup Cay, the passengers were not informed of the severity of the weather system the cruise was intending on sailing into. In fact, it wasn't until the next day when large waves were rocking the cruise ship, causing passengers and crewmembers to become seasick, did the vessel warn the passengers. However, the only warning the passengers received was "**Ladies and gentlemen, we are in rough seas and we are optimizing our speed and course to minimize the movement of the ship**." Passengers had no idea they were being subjected to a historic winter weather event with hurricane force winds.

104. The below images show the massive storm that NCL knowingly sailed through:



105. As predicted, by late evening on Wednesday, January 3, 2018, the hurricane-force winds and rough seas were battering the vessel so severely that passengers were unable to stand in their staterooms and were being thrown out of their beds; causing various injuries to passengers, including Plaintiffs.

106. While confined to their staterooms and small public spaces in the interior, passengers were holding onto whatever they could find in order to keep from falling due to the weather event. Furniture was overturned and tossed throughout the vessel; broken glass littered all levels of the vessel; elevators became inoperable; unsanitary water overflowed out of shower drains and into passengers' cabin; waves crashed through open and/or shattered balcony doors; water rushed in through numerous other areas of the vessel; and pipes consisting of raw water burst on the vessel, causing flooding throughout multiple decks of the vessel.







107. At times the vessel listed (tilted) as far as 45 degrees and passengers were injured. Waves up to 30 feet were crashing along the side of the *Norwegian Breakaway* as the ship listed to either side.

108. Passengers scrambled to search for life jackets or floatation devices, but were unable to do so. There were numerous families with small children aboard the vessel and parents did their best to protect themselves and their young children who were crying uncontrollably and screaming in sheer terror.

109. Hundreds of passengers, including Plaintiffs, were subjected to hours of terror, flooding of raw water, unsanitary conditions, lack of ventilation of fumes, and trauma as a result of the cruise traveling through hurricane force winds – all of which could have been easily avoided if NCL stayed in Great Stirrup Cay until the severe winter storm passed or rerouted the ship so that the passengers were not exposed to the dangerous weather conditions. As a result of NCL's negligence, passengers sustained physical and emotional injuries.

110. Each and all of the foregoing conditions, including but not limited to, the impending dangerous weather and sea conditions, were known and/or should have been known to NCL prior to the time NCL decided to leave Great Stirrup Cay on January 2, 2018. As such, NCL knowingly, intentionally and recklessly decided to sail directly into the path of a hurricane force storm, thereby placing the lives at risk of each and every one of the passengers and crew aboard that ship.

**COUNT I – NEGLIGENCE**

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 110 as though alleged originally herein and further allege:

111. It was the duty of Defendant NCL to provide Plaintiffs with reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). "The degree of care considered reasonable in a particular circumstance depends upon the 'extent to which the circumstances surrounding maritime travel are different from those encountered in daily life and involve more danger to the passenger.' " *Samuels,* 656 F.3d at 953, citing *Rainey v. Paquet Cruises, Inc.,* 709 F.2d 169, 172 (2d Cir.1983). Where the condition leading to the plaintiff's claim is one that is commonly encountered and not unique to the maritime context, a carrier must have "'actual or constructive notice of the risk-creating

condition' before it can be held liable." *Id.* at 953, citing *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir.1989). By contrast, a heightened degree of care is required where the risk-creating condition is peculiar to the maritime context. *See Catalina Cruises v. Luna,* 137 F.3d 1422, 1425–26 (9th Cir.1998) (concluding that "where the risk is great because of high seas, an increased amount of care and precaution is reasonable"); *Kirk v. Holland American Line,* 616 F.Supp.2d 1101, 1105 (W.D.Wash.2007) (declining to conclude that risks associated with disembarkation are not unique to cruises); *Kearns v. Celebrity Cruises, Inc.,* 1997 WL 729108, *2 (S.D.N.Y.1997) (holding that "given the rough weather attending plaintiff's injury, [the defendant cruiseline] owed an enhanced duty of care to its passengers"). Under this heightened/enhanced duty of care to passengers on vessels navigating through hurricane force winds and on rough sea conditions, Defendant NCL breached its duty to keep passengers, including Plaintiffs, safe from the perilous conditions.

112. It was the duty of Defendant NCL to provide Plaintiffs with reasonable care under the circumstances.

113. On or about January 2, 2018 and continuing until January 3, 2018, NCL and/or its agents, servants, and/or employees breached its duty to provide Plaintiffs with reasonable care under the circumstances.

114. Plaintiffs were injured due to the fault and/or negligence of Defendant NCL, and/or its agents, servants, and/or employees as follows:

  a. Failure to use reasonable care to provide and maintain a safe voyage for Plaintiffs and others similarly situated, fit with proper and adequate machinery, crew, and equipment; and/or

  b. Knowingly sailing the subject vessel into severe weather conditions; and/or

c. Failing to have proper policies and procedures in place to determine whether to sail into dangerous weather conditions; and/or

d. Deciding to sail the vessel despite severe weather warnings; and/or

e. Failing to have adequate technology capable of properly monitoring weather conditions in real time; and/or

f. Sailing the vessel into hurricane-force winds; and/or

g. Sailing the vessel into 30 foot seas; and/or

h. Failing to turn back the vessel and/or divert the vessel and/or seek safe harbor before and encountering the storm; and/or

i. Failing to warn passengers of the dangers of leaving Great Stirrup Cay, Bahamas on the *Norwegian Breakaway* in light of the expected weather and sea conditions; and/or

j. Failure to maintain the vessel free of unsanitary water and/or flooding; and/or

k. Failure to warn of unsanitary water flooding throughout multiple decks of the vessel; and/or

l. Failing to take a safe route from Great Stirrup Cay, Bahamas, to New York, New York; and/or

m. Failing to alter the route to a safer route while at sea; and/or

n. Exposing the vessel to weather and sea conditions that the vessel was unfit for; and/or

o. Failing to promulgate and/or enforce adequate policies and procedures to prevent the vessel from sailing into an expected storm; and/or

p. Failing to promulgate and or enforce adequate policies and procedures to

require the vessel to turn around and/or seek safe harbor when an expected storm became likely; and/or

q. Failing to use reasonable care to promulgate and/or enforce adequate policies and procedures to ensure that the vessel was operated in a safe weather condition; and/or

r. Exposing its passengers to hurricane force weather conditions; and/or

s. Failure to provide adequate training, instruction, and supervision to the captain and crew; and/or

t. Failure to promulgate and/or enforce adequate policies and procedures to ensure that safety would not be compromised for cost and/or profits; and/or

u. Failure to adequately maintain the *Norwegian Breakaway*, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

v. Failure to warn of inadequate maintenance aboard the vessel as it was sailing through the storm; and/or

w. Failure to adequately inspect the *Norwegian Breakaway*, its engines, machinery, and sanitary systems so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

x. Failure to promulgate policies and/or procedures aimed at preventing the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

y. Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan to protect the health and welfare of passengers

      during an emergency; and/or

  z. Failure to determine and/or appreciate the hazards associated with operating the subject vessel's propulsion system while encountering severe weather and sea conditions; and/or

  aa. Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

  bb. Failure to promulgate adequate storm avoidance policies aimed at ensuring the safety of passengers; and/or

  cc. Failure to employ an in-house meteorological staff tasked with monitoring storms and/or sea conditions to ensure the safety of passengers.

115. At all material times, Defendant NCL had exclusive custody and control of the vessel, *Norwegian Breakaway*.

116. Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

117. As a result of the negligence of NCL, Plaintiffs were injured about their body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages,

income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT II – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs 1 through 110 as though alleged originally herein and further allege:

118. At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Said risk of physical harm included but is not limited to: injury and/or death and/or severe emotional and/or psychological trauma.

119. Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares.

120. During the time period alleged in the complaint, Plaintiffs were confined to the interior of the vessel for approximately 24 hours and were subjected to the violent storm causing a reasonable fear of death and the sinking of the vessel.

121.    Plaintiffs aboard the *Norwegian Breakaway* were placed in the zone of danger as a result of the violent storm.  Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical, mental and/or emotional injury and/or illness.

122.    Plaintiffs' fear of death and experience of mental, emotional and/or physical harm were genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of NCL. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, anxiety, nightmares, and dizziness.

123.    As a result of the negligent inflection of emotional distress by NCL, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

**Dated: December 21, 2018**

>                             Respectfully submitted,
>
>                             LIPCON, MARGULIES,
>                             ALSINA & WINKLEMAN, P.A.
>                             *Attorneys for Plaintiffs*
>                             One Biscayne Tower, Suite 1776

        2 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone No.: (305) 373-3016
        Facsimile No.: (305) 373-6204

By: */s/ Michael A. Winkleman*
    **MICHAEL A. WINKLEMAN**
    Florida Bar No. 36719
    mwinkleman@lipcon.com
    **JASON R. MARGULIES**
    Florida Bar No. 57916
    jmargulies@lipcon.com
    **MARC E. WEINER**
    Florida Bar No. 91699
    mweiner@lipcon.com
    **DANIEL W. GRAMMES**
    Florida Bar No. 1010507
    dgrammes@lipcon.com